UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

YAHAIRA S. P.,

                                    Plaintiff,

                        v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                    Defendant.
_____

DECISION AND ORDER

20-CV-6652L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On March 28, 2017, plaintiff, then thirty-nine years old, filed an application for supplemental security income, alleging an inability to work since April 30, 2014. (Administrative Transcript, Dkt. #11 at 15). Her application was initially denied. Plaintiff requested a hearing, which was held on May 6, 2019 before Administrative Law Judge ("ALJ") John P. Costello. The ALJ issued a decision on August 30, 2019 concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #11 at 15-27). That decision became the final decision of the Commissioner when the Appeals Council denied review on June 29, 2020. (Dkt. #11 at 1-3). Plaintiff now appeals.

The plaintiff has moved for judgment remanding the matter for the calculation and payment of benefits or in the alternative for further proceedings (Dkt. #12), and the Commissioner has cross

moved (Dkt. #13) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records, including a history of treatment for depressive disorder, bipolar disorder, diabetes mellitus, hypertension, and left knee osteoarthritis, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #11 at 17). Applying the special technique for mental impairments, the ALJ concluded that plaintiff has mild limitations in understanding, remembering, and applying information, moderate limitations in social interaction, mild limitations in concentration, persistence, and pace, and mild limitations in adapting or managing herself. (Dkt. #11 at 19).

Upon consideration of the record, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, with no more than frequent fingering and handling. She is limited to simple, routine tasks requiring no more than occasional interaction with coworkers and supervisors, and no contact with the general public. (Dkt. #11 at 21).

2

The ALJ determined that plaintiff had no past relevant work. However, when presented with the foregoing RFC at the hearing, vocational expert Peter A. Manzi testified that such an individual could perform the representative unskilled, light exertion positions of cleaner (housekeeping) and bagger. (Dkt. #11 at 27, 75). The ALJ accordingly found plaintiff not disabled.

For the reasons that follow, I believe the evidence supports the ALJ's findings concerning the nature and extent of plaintiff's limitations, and that his finding that the plaintiff was not disabled was supported by substantial evidence and was not the product of reversible legal error.

## I.     The ALJ's Mental RFC Finding

Plaintiff initially argues that the ALJ failed to properly assess the medical opinions of record with respect to plaintiff's mental RFC, and thus reached an RFC unsupported by substantial evidence. Specifically, plaintiff argues that the ALJ failed to consider the supportability, consistency, specialization, and relationship factors set forth in 20 C.F.R. §404.1520c(a), ignored evidence suggestive of disability, and weighed the medical opinions using inconsistent standards.

The record contained several medical opinions concerning plaintiff's mental RFC. On January 17, 2017, treating psychiatric nurse Marci Dietz opined, based on a brief therapeutic history from August 22, 2016 through October 24, 2016, that in addition to several moderate limitations, plaintiff was "very limited," defined as unable to function 25% or more of the time, in performing simple and complex tasks independently, maintaining attention and concentration, and performing low stress, simple work. (Dkt. #11 at 233-35). She indicated that as a result, plaintiff would be unable to work for 3-6 months. *Id*.

On November 1, 2017, treating therapist Colleen Ignatowski opined, based on a five-month treatment history, that in addition to several moderate limitations, plaintiff was "very" limited in performing simple and complex tasks independently, and that her limitations would be expected

3

to last for six months. (Dkt. #11 at 594-97). In a second opinion on May 8, 2018, Ms. Ignatowski opined that plaintiff had several moderate limitations, and was "very limited" in maintaining a routine. She indicated that plaintiff's limitations would once again preclude work for a period of six months. (Dkt. #11 at 680-83).

On March 25, 2019, plaintiff's treating psychiatrist of five months, Dr. Lorangelly Rivera, opined that in addition to some moderate limitations, plaintiff had serious limitations in maintaining a pace, getting along with others, responding to changes, and coping the with the stresses of semiskilled work, and marked limitations in maintaining attention for two-hour segments, completing a normal work week, dealing with normal work stresses, and self-management. Dr. Rivera also opined that plaintiff would miss work more than four days per month due to symptoms. (Dkt. #11 at 438-40).

The ALJ found each of these opinions "not generally persuasive," noting that all but Dr. Rivera's had been submitted in check-box format with little or no narrative explanation, and that the opinions were inconsistent with plaintiff's treatment records, which indicated that she was "generally cognitively intact," and had been running a household, caring for up to five children at a time, working two jobs at least part-time, driving, shopping, and cooking. (Dkt. #11 at 24). The ALJ also identified internal inconsistencies in Dr. Rivera's opinion (e.g., opining that claimant was unable to deal with the normal stresses of unskilled work, but was not precluded from handling the stresses of semiskilled and skilled work), as well as inconsistencies with plaintiff's mental status examinations by Dr. Rivera, which did not consistently show any appreciable abnormalities. (Dkt. #11 at 24).

The ALJ also considered the opinion of consulting psychologist Dr. Todd Deneen, who examined plaintiff on July 8, 2019. Dr. Deneen found that plaintiff's attention and concentration

4

were mildly impaired, her memory skills were intact, and her intellectual functioning was below average. Dr. Deneen opined that plaintiff would have moderate limitations in controlling behavior and maintaining well-being, and mild limitations in other areas, including handling simple and complex instructions, sustaining a routine, interacting with others, using judgment, and avoiding hazards. (Dkt. #11 at 851-54). The ALJ found Dr. Deneen's opinion "generally persuasive," noting that it was "congruent with the lack of significant abnormality on examination," including plaintiff's "repeatedly normal mental statuses . . . over the years." (Dkt. #11 at 25).

The ALJ's analysis sufficiently considers the supportability, consistency, specialty and relationship factors that were relevant to his analysis. Although plaintiff argues that the ALJ overlooked evidence that plaintiff's mental limitations were more dramatic than the ALJ determined – such as treatment records in which plaintiff was described as anxious, upset, labile, overwhelmed, or tearful – I find that the ALJ's overall characterization of plaintiff's mental health treatment history was not factually erroneous. Specifically, the ALJ's observation – that the more dramatic limitations suggested by plaintiff's mental health care providers were inconsistent with their treatment records – was well-supported. It is true that plaintiff's mental health treatment records reflected periodic waxing and waning of symptoms, most of which were directly attributable to positive events (e.g., excitement for an upcoming vacation) or negative events (e.g., a family member's cancer diagnosis) in plaintiff's life. However, the treatment notes indicated that on most occasions, even when plaintiff presented as depressed or anxious, she was alert and oriented, and tended to display coherent thought processes, fair or intact attention and concentration, fair or better insight, fair or better judgment, and no suicidal ideation. (Dkt. #11 at 337-38, 341-42, 345, 467, 471, 486, 490, 493, 526, 529, 536-37, 542-43, 546, 564, 570-71, 583, 589-90, 599-600, 602-603, 606, 613-14, 618-19, 622-23, 625).

An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," and the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Furthermore, a properly-supported opinion by a consulting physician, such as the opinion of Dr. Deneen which the ALJ found persuasive, can comprise substantial evidence in support of an ALJ's RFC determination where it is consistent with other evidence of record, such as treatment notes. *See Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020)("[a] consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record")(quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). I find that the ALJ gave due consideration to the appropriate factors in weighing the medical opinions of record, and that his RFC finding limiting plaintiff to, inter alia, simple, routine tasks with limited social contact, was supported by substantial evidence of record, and sufficiently accounted for plaintiff's established mental limitations.

## II.    The ALJ's Exertional RFC Determination

Plaintiff also contends that the ALJ erred when he failed to incorporate certain physical limitations, suggested by treating or examining physicians, into his RFC determination.

The Court disagrees.

Treating physician and psychiatric specialist Dr. Telva Olivares rendered an opinion on April 26, 2019, following a fifteen month treatment history. Dr. Olivares stated that due to left knee pain from bone spurs, plaintiff could sit, stand and walk for two hours at a time in an eight-hour workday for a total of 2 hours, walk up to two blocks, frequently lift and carry up to 20 pounds and rarely lift 50 pounds, occasionally climb stairs, rarely climb ladders, and frequently perform other postural activities, and would miss four days of work per month due to symptoms.

(Dkt. #11 at 835-36). Dr. Olivares's narrative explanation stated that, "patient has physical and psychiatric limitation[s] . . . Physically, her knee becomes edematous after squatting, bending for sustained periods of time." (Dkt. #11 at 836).

The ALJ found Dr. Olivares's opinion unpersuasive, due to inconsistencies with other evidence of record, including imaging studies showing only mild findings relative to plaintiff's knee, and treatment records showing that all of plaintiff's other physical impairments, such as hypertension and diabetes, were consistently well-controlled without medication, and that even during her treatment with Dr. Olivares, she was "working full [time] in the Marriott hotel" as a housekeeper. (Dkt. #11 at 24, 749). *See also* Dkt. #11 at 753 (October 19, 2018 progress note by Dr. Rivera, reporting that plaintiff has been "[w]orking in the Marriott housekeeping for the past 3 months and she really likes it, is also doing catering on the side"). Indeed, Dr. Olivares's progress notes report that, "[patient] is a 41 [year-old] with multiple self[-]reported but seemingly inactive medical issues," and do not contain any abnormal objective findings. No medications or other treatments for plaintiff's knee pain, diabetes, or hypertension were recommended. (Dkt. #11 at 750).

Consulting internist Dr. Harbinder Toor examined plaintiff on July 8, 2019. Plaintiff reported knee pain, but was not taking any medications. Squat and left knee range of motion were limited on examination, but all other objective findings (e.g., gait, stance, flexion, extension, strength, dexterity) were entirely normal. Dr. Toor opined that plaintiff had "moderate" limitations in standing, walking, squatting, lifting, and carrying. Dr. Toor defined plaintiff's sitting, standing and walking limitations as sitting for up to 8 hours in an 8-hour workday, for up to 60 minutes at a time, and standing and walking for up to 4 hours each, both for up to 30 minutes at a time. Plaintiff could frequently climb, balance and kneel, and continuously perform all other postural

activities, as well as handling and fingering. (Dkt. #11 at 839-48). She could tolerate "frequent" exposures to respiratory irritants. (Dkt. #11 at 847).

The ALJ found Dr. Toor's opinion "generally persuasive," noting that it was well-supported by detailed objective examination findings and explanations, and was consistent with the physical and neurological findings in plaintiff's treatment records. (Dkt. #11 at 22, 25).

The ALJ's RFC determination limited plaintiff to light work, with no more than frequent fingering and handling. (Dkt. #11 at 21). The ALJ only partially credited the standing and walking limitations described by Dr. Toor and Dr. Olivares, and rejected the additional postural and absenteeism limitations opined by Dr. Olivares, finding them inconsistent with evidence of record, including plaintiff's left knee imaging showing only mild findings, grossly normal objective examination results, plaintiff's "unremarkable medical record," and history of conservative (or no) treatment for her left knee, diabetes, and hypertension, and her self-reported activities, including child care, working as a hotel housekeeper, and catering, all of which suggested standing and walking abilities greater than those specified in the medical opinions. (Dkt. #11 at 26).

As the ALJ noted, plaintiff's unremarkable treatment history, the dearth of objective findings supporting greater than moderate standing and walking limitations, and the physical demands of plaintiff's self-reported daily activities, including work as a hotel housekeeper, comprised substantial evidence in support of the ALJ's finding that plaintiff retained the RFC to perform a limited range of light work. I find no error therein. *See generally Bethany A. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 8838 (W.D.N.Y. 2022); *Bonita F. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 110176 (W.D.N.Y. 2021).

I have considered the rest of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #12) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety. Plaintiff's complaint is, therefore, dismissed.

IT IS SO ORDERED.

_____

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 3, 2022.